UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROXANNA SCHOTT, )<br>a/k/a "ROXANNA COX," )<br>  )<br>   Plaintiff, )<br>  )   1:12-cv-00430-SEB-DKL<br>  vs. )<br>  )<br>THE HUNTINGTON NATIONAL BANK, )<br>  )<br>   Defendant. ) | |

**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS**

This cause comes before the Court on Defendant's Partial Motion to Dismiss [Docket No. 15], filed May 30, 2012, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Defendant, Huntington National Bank, initially moved to dismiss Counts II, III, and IV of the Complaint [Docket No. 1] which Plaintiff, Roxanna Schott, filed on April 3, 2012. Following Plaintiff's voluntary dismissal of Count IV, pursuant to Federal Rule of Civil Procedure 41(a)(1), the Court accepted dismissal of the same without prejudice and without issuing an order. *See* Docket No. 19. Counts II and III remain pending, and Plaintiff opposes Defendant's motion to dismiss these claims. For the reasons detailed below in this entry, Defendant's motion is GRANTED.

**Factual Background**

Defendant, an Ohio corporation with its principal place of business in Columbus, Ohio, is a financial entity authorized to conduct business in Indiana. Compl. ¶ 4. On

1

May 9, 2001, Defendant extended a home equity line of credit ("the HELOC") in the amount of $215,000 to Plaintiff and her husband, Paul Schott. *Id.* ¶¶ 8-9, 13; Pl.'s Ex. A (personal credit line agreement). Plaintiff, Mr. Schott, and an agent of Defendant were all signatories to the HELOC agreement, which was secured by a mortgage on Plaintiff's Alexandria, Indiana residence.[1] Compl. ¶¶ 9-11. According to the terms of this ten-year agreement, the credit limit could be repaid to Defendant through May 9, 2010. *Id.* ¶ 9.

In 2007, Plaintiff's marriage to Mr. Schott was dissolved by order of the Madison Superior Court, Cause Number 48D01-0503-DR000264. Compl. ¶ 13. The Schotts' divorce decree awarded the Alexandria, Indiana residence exclusively to Plaintiff and terminated Mr. Schott's equity interest in the property. Because the residence was still encumbered by the HELOC debt, Plaintiff remained jointly and severally liable for this amount. *Id.* ¶ 14. She became the sole obligor for the HELOC debt after Mr. Schott filed a Chapter 13 bankruptcy action[2] and resolved all of his debt obligations under the terms of the resulting bankruptcy plan. *Id.* ¶ 15. With regard to Mr. Schott's HELOC liability, the trustee of his bankruptcy plan approved a claim by Defendant in the amount of $22,800 and treated this debt as unsecured. Plaintiff, who was not a party to the foregoing bankruptcy proceedings, signed an instrument affirming her obligation under the HELOC/mortgage at Defendant's request. *Id.* ¶¶ 16-18.

Plaintiff asserts that she "at all times made the required HEL[OC]/Mortgage

---

[1] Plaintiff has owned the real property serving as collateral for the HELOC and mortgage for more than twenty years; it is her primary residence. Compl. ¶ 20.
[2] Mr. Schott's bankruptcy action, Cause Number 08-07170-FJO-13, was filed in the United States Bankruptcy Court for the Southern District of Indiana on June 18, 2008. Compl. ¶ 15.

[p]ayments or attempted, in good faith, to comply with [her] payment obligation to Defendant." Compl. ¶ 19. She alleges that although Defendant initially sent periodic billing statements for the HELOC, it ceased to do so in the spring of 2009 and ignored her requests to provide such updates from that point onward. *See id.* ¶ 22. According to Plaintiff, "[a]ll [she] wanted to know was how much to pay." Pl.'s Ex. C (hereafter "QWR") at 1. To that end, she submits several excerpts from a prolonged colloquy between her and Defendant occurring from the spring of 2009 to early 2010 to illustrate her troubles:

- "I called the 800 number[,] and [Defendant] told me they could not tell me anything about the loan because it was in [b]ankruptcy;"
- "I went to the bank in Alexandria and wrote a check for the amount I hoped would cover [four] months['] worth of payments . . . . When I went into the [Alexandria] branch . . . somehow [the teller] must not have credited this [payment] to my account;"
- "In July[,] between the week of the 19th to 25[th,] I received a call from a lady from Huntington telling me I [wasn't] making my payments . . . . [S]he basically told me I had no rights to knowledge on this account[,] only the right to make the payments if I could figure out what was owed;"
- "In mid[-]August[,] I finally spoke to someone who talked to me . . . and was able to get my payments credited through September;"
- "When I went to the bank in late October[,] they told me I had no account;"
- "I went into the Elwood branch in the first week [of] January and spoke with Trista Tragesser. She had been very helpful[] in the past and . . . made several phone calls . . . . [Defendant] told me the loan had been charged off in October . . . [and that] I needed to make a payment of $2702.91 to account # ____0903;"
- "[O]n January 23[, 2010,] . . . I talked to a woman who told me she had no idea where I would get the idea that I could pay on this loan . . . . [A]fter being left on hold[,] I was transferred to Mike Goodare;" and
- "Now I am told I may have to pay larger payments and not have the benefit of my equity line. I had hoped to pay the line down by $100,000 this year."

QWR at 1-2.

On January 25, 2010, hoping "to finally resolve the[se] intermittent servicing issues," Plaintiff communicated the foregoing concerns to Huntington manager Michael Goodare[3] via email. Pl.'s Resp. at 2; Compl. ¶ 23. She did so pursuant to the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(1)(B), which governs qualified written requests ("QWRs") for information related to the servicing of federal mortgage loans. Plaintiff alleges that, contrary to RESPA's requirements, Defendant "declined to respond in any meaningful way to [her] QWR." Compl. ¶ 26. Six months later (on June 3, 2010), she received notice that Defendant had filed a Complaint on Credit Line Agreement against her in the Madison Superior Court. By virtue of that lawsuit, Cause Number 48D02-1006-CC-00452, Defendant sought damages in the amount of $211,277.33, accrued interest, and its attorneys' fees. *Id.* ¶ 31; Pl.'s Ex. B at 1.

Plaintiff also asserts that Defendant reported her to consumer credit reporting agencies for allegedly failing to honor her obligations under the HELOC agreement. She contends that this rendering of her credit record "was known to be false . . . [and] made in apparent bad faith." Compl. ¶¶ 33-34. Nevertheless, despite her request that Defendant renounce such reports, she maintains that Defendant "failed to correct the error within 30 days." *Id.* Plaintiff avers that her business, a "real estate rehabilitation, construction, and rental" operation, requires that she be able to draw upon credit lines. *Id.* ¶¶ 21, 35. Thus, in her opinion, Defendant's conduct has significantly damaged her ability to finance

---

[3] Plaintiff characterizes Mr. Goodare as "one of Defendant's managers involved [with] and knowledgeable [of] Plaintiff's accounts with Defendant." Compl. ¶ 47.

subsequent business activities. *Id.* ¶ 33. This litigation initiated by her against Defendant is an attempt by Plaintiff to vindicate her rights and to recover for her injuries.

## **Legal Analysis**

### I. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits the district court to dismiss a complaint for failure to state a claim for which relief can be granted. Such a motion, therefore, tests the sufficiency of the complaint. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of notice pleading, but detailed factual allegations are not required. *Id.* Even so, a party moving to dismiss bears a weighty burden because an adequately stated claim "may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). In addressing a Rule 12(b)(6) motion, the district court treats all well-pled factual allegations as true and construes all inferences that reasonably may be drawn from those facts in the light most favorable to the non-moving party. *Lee v. City of Chi.*, 330 F.3d 456, 459 (7th Cir. 2003).

When a plaintiff has alleged fraud or mistake, as advanced in the case before us in

Count III, she must clear the additional hurdle of stating all such averments with particularity. This heightened pleading standard, imposed by Rule 9(b), requires the complaint to contain more than the "short and plain statement of the claim" described in Rule 8(a)(2). As explained by the Seventh Circuit, "facts such as 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff' [must] be alleged in detail." *Heffernan v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). Malice, intent, and knowledge, however, may be asserted in general terms. Moreover, Rule 9(b) "does not require a plaintiff to demonstrate that a representation was indeed false." *Id.* (citing *Bankers Trust Co.*, 959 F.2d at 683).

Generally, a federal district court sitting in diversity applies its own procedural laws and the substantive laws of the state in which it convenes. *First Nat'l Bank & Trust Corp. v. Am. Eurocenter Corp.*, 378 F.3d 682, 689 (7th Cir. 2004). "[S]tatutes of limitation[] are considered substantive matters for purposes of the *Erie* doctrine." *Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006) (citing *Guar. Trust v. York*, 326 U.S. 99, 110 (1945)). Indiana uses the *lex loci delicti commissi* rule as a "starting point" in tort claims, which means that courts apply "the substantive law where the tort was committed," *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987), "unless the state where the tort occurred is an insignificant contact." *Simon v. United States*, 805 N.E.2d 798, 804 (Ind. 2004) (internal quotation marks omitted). In the instant case, therefore, we will

apply the substantive law of Indiana—including its applicable statutes of limitation—to Plaintiff's state law claims.

## II. Discussion

### A. Negligence and Recklessness Claim

Plaintiff must prove three elements in order to prevail on her negligence claim: (1) that Defendant owed her a duty; (2) that Defendant breached that duty; and (3) that Defendant's breach proximately caused her alleged injuries. *Robertson v. B.O.*, 977 N.E.2d 341, 344 (Ind. 2012). If she successfully establishes each of these elements, Defendant will be found liable, *i.e.*, "legally obligated or accountable," *Atterholt v. Herbst*, 902 N.E.2d 220, 223 (Ind. 2009) (quoting BLACK'S LAW DICTIONARY (8th ed. 2004)), and the Court must then determine the amount of damages to which Plaintiff is entitled. *Robertson*, 977 N.E.2d at 344. Proving that Defendant acted recklessly, however, requires a more substantial showing by Plaintiff. Specifically, she must demonstrate "an extreme departure from the standards of ordinary care to the extent that . . . danger was either known to the defendant or so obvious that the defendant must have been aware of it." *S.E.C. v. Lyttle*, 538 F.3d 601, 603 (7th Cir. 2008) (applying Indiana law). The Indiana Supreme Court has also approved of characterizing such misconduct as "an intentional act done with *reckless disregard* of the natural and probable consequence of injury to a known person under the circumstances" or, alternatively, as "an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk." *Clancy v. State*, 829 N.E.2d 203, 208 (Ind. Ct. App. 2005)

(citing *Witham v. Norfolk & W. Ry. Co.*, 561 N.E.2d 484, 486 (Ind. 1990)).

Under Indiana law, the statute of limitation for a negligence and/or recklessness claim is two years from the date the cause of action accrues. Ind. Code § 34-11-2-4; *see Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind. 2008). "[T]he cause of action of a [negligence] claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992). This principle represents a merger of Indiana's historical "ascertainment rule" and the "discovery rule" commonly used in other jurisdictions. *Wehling*, 586 N.E.2d at 843. For purposes of Indiana's discovery rule, only "some ascertainable damage" need occur for a claim to accrue; the full extent of the damage need not be known. *Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009). Determining precisely when a cause of action accrues is a question of law for the court. *Id.* (citing *Barnes v. A.H. Robins Co.*, 476 N.E.2d 84 (Ind. 1985)).

In Count II, Plaintiff avers that Defendant's breach of the following duties was the direct and proximate cause of her alleged injuries:

> a duty to act reasonably and responsibly in servicing [her] account; a duty to accept payment from [her] when tendered; a duty to apply such payment to [her] account when requested; a duty to respond to [her] reasonable servicing requests and/or correct any account issues to which [it was] knowledgeable; a duty to inform [her] before charging-off her HEL[OC]/Mortgage; a duty to acknowledge [her] concerns[;] and a duty to inform [her] before reporting such charge-off to any credit reporting agency.

Compl. ¶ 60. She also contends that Defendant's "knowing and continued disregard for

8

[her] reasonable and repeated requests to correct discrepancies and accept payment upon her account," as well as its filing of a civil complaint against her in the Madison Superior Court, "constitute the hallmark of reckless and wonton disregard for [its] duty." *Id.* ¶¶ 62-63. Because of Defendant's misconduct, Plaintiff asserts, she sustained the following injuries: destruction of her "home-flipping" business; financial ruin from the loss of her livelihood and legal fees; and exacerbation of her pre-existing multiple sclerosis, leading to numerous medical procedures and "a projected decrease in life-span and quality." *Id.* ¶¶ 36-40; *see* QWR at 2 ("I flip houses.").

Without addressing the factual allegations offered in support of Count II, Defendant asserts that this claim is barred by Indiana's two-year statute of limitation. According to Defendant, Plaintiff has conceded that "she knew of the alleged loan servicing problems before January 25, 2010, but . . . did not file her Complaint until April 3, 2012." Def.'s Br. at 4. Defendant further contends that, in fact, Plaintiff had sufficient "aware[ness] of the alleged negligence and related injury in 2009." Def.'s Reply at 2. Plaintiff rejoins that her cause of action in the foregoing claim accrued on June 3, 2010, when she received service of Defendant's Complaint on Credit Line Agreement and thereby "received definitive knowledge of Defendant[']s ultimate failure to fulfill its duty." Pl.'s Resp. at 3. Prior to that date, she declares, she "worked under the assumption that [her] account was being remedied" and, therefore, was unaware that she had been damaged by Defendant's alleged actions. *Id.* For the reasons stated below, we agree with Defendant.

A plaintiff whose complaint contains facts that establish the statute of limitation

defense effectively pleads herself out of court, making dismissal under Rule 12(b)(6) appropriate. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999). This principle suitably describes the state of the pleadings in the instant lawsuit. Even drawing all reasonable inferences from the facts in Plaintiff's favor, as we must do at the dismissal stage, we cannot reconcile Plaintiff's understanding of time deadlines with governing law. Her attempt to cast June 3, 2010—the day she claims she "definitively" knew of Defendant's "ultimate" breach of duty and finally appreciated the full extent of her alleged injuries—as the accrual date cannot stand. As we have noted above, the limitation period for negligence and recklessness begins to run when a plaintiff first ascertains that *some* damage has occurred. "[I]t is not necessary that the full extent of the damage be known," *Cooper Indus., LLC*, 899 N.E.2d at 1280, for it is well-settled that "possession of information leading to a reasonable possibility that [the tort] has occurred is sufficient for the statute of limitations to be triggered." *Garneau v. Bush*, 838 N.E.2d 1134, 1141 (Ind. Ct. App. 2005).

Our review of the pleadings makes clear that Plaintiff possessed ample knowledge of facts reasonably supporting a negligence and/or recklessness claim well before June 3, 2010. Indeed, her detailed allegations in the QWR support no other conclusion. By Plaintiff's own admission, some of the injuries claimed in that writing and her Complaint had become problematic as early as July 2009, when she and Defendant began disputing her payment history. *See* QWR at 2 (discussing unsuccessful attempts to resolve her account issues via phone call). Her October communications with Defendant led her to

question whether Defendant had wrongfully terminated her account. *See id.* Moreover, Plaintiff was suffering from HELOC-related financial difficulties and personal stress before January 25, 2010, as corroborated by her remark to Mr. Goodare that "[b]etween no communication and a big teller error[, she] was left hanging." *Id.* We certainly believe her knowledge exceeded that of the plaintiff in *McFarland Foods Corp. v. Chevron USA, Inc.*, No. IP99-1489-C-H/G, 2001 WL 238084, at *4 (S.D. Ind. Jan. 5, 2001), whose common law claims accrued following receipt of a single report. *McFarland Foods Corp.*, 2001 WL 238084, at *3-4. Bearing the *McFarland Foods Corp.* holding in mind, and noting that the pleadings repeatedly indicate that Plaintiff purposely acquired knowledge of potentially tortious conduct before January 25, 2010, it is axiomatic that she waited too long to file her claim. "[A] plaintiff may not sit idly by if [she] discover[s] facts that alert [her] that [she] has a cause of action." *Garneau*, 838 N.E.2d at 1145 (citing *Parks v. Madison Cnty.*, 783 N.E.2d 711, 719 (Ind. Ct. App. 2002)).

Even under Plaintiff's tenuous theory that the accrual date should be tolled, we would consider her negligence and recklessness claim time-barred. This type of tolling is, of course, permissible under the doctrine of "continuing wrong," which applies where an entire course of conduct produces a plaintiff's injury. *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 78 (Ind. Ct. App. 2010). But to invoke this doctrine, the plaintiff must demonstrate that the allegedly tortious conduct was continuous in nature. *Johnson v. Blackwell*, 885 N.E.2d 25, 31 (Ind. Ct. App. 2008). Plaintiff has not done so here, and we are aware of no authority standing for the proposition that this doctrine

applies to similarly situated plaintiffs. Further, even if the doctrine did apply, it "[would] not prevent the statute of limitation[] from beginning to run when the plaintiff learn[ed] of facts which should lead to the discovery of [her] cause of action even if [her] relationship with the tortfeasor continue[d] beyond that point." *Parks*, 783 N.E.2d at 719. Ultimately, Plaintiff's contention that the accrual date is February 24, 2010—thirty days after she tendered her QWR—is of no moment because she still waited thirty-seven more days to file her Complaint. Her misguided attempt to rehabilitate the pleadings by framing Huntington's Complaint on Credit Line as the moment of accrual is similarly inapposite. Accordingly, we conclude that Plaintiff's negligence and recklessness claim is barred by Indiana law and must be dismissed pursuant to Rule 12(b)(6).

### B. Fraud Claim

Under Indiana law, a claim for fraud will lie when there is "a material misrepresentation of past or existing fact made with knowledge of or reckless disregard for the falsity of the statement, and the misrepresentation [is] relied upon to the detriment of the relying party." *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 675 (Ind. 1997) (citations omitted). These allegations must appear in the complaint itself. *See MDG Int'l, Inc. v. Australian Gold, Inc.*, No. 1:07-cv-1096-SEB-TAB, 2008 WL 3982072, at *2 (S.D. Ind. Aug. 22, 2008). In addition, a plaintiff asserting fraud must perform "more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate," and her complaint must demonstrate "the who, what, when, where, and how." *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1123 (S.D. Ind.

2011) (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). Overly general allegations of fraud and misrepresentation do not satisfy the heightened pleading standard imposed by Rule 9(b). *SMC Corp. v. PeopleSoft U.S.A., Inc.*, No. 1:00-cv-1095-LJM-VSS, 2004 WL 828226, at *2 (S.D. Ind. Mar. 15, 2004); *see also Mudd v. Ford Motor Co.*, No. 1:04-cv-465-TS, 2005 WL 2369833, at *4 (N.D. Ind. Sept. 27, 2005) (rejecting fraud claim where the allegedly affirmative misrepresentation "offer[ed] no specifics and [was] too vague to assign any meaning to it").

In Count III of her Complaint, Plaintiff advances the following allegations to support her claim of fraud and misrepresentation:   (1) that Defendant "was directly informed on numerous occasions of . . . mistakes upon [her] account;" (2) that Defendant "was knowledgeable" of the alleged "error of charging-off the HEL[OC]/Mortgage;" (3) that Defendant filed its Complaint on Credit Line to intimidate her; and (4) that "Defendant intentionally misrepresented and fraudulently sought to conceal [its] liability in this matter in an effort to recover [its] financial loss." Compl. ¶¶ 66-69.   Defendant characterizes this claim as one which "rel[ies] on general allegations," and we agree.   Neither the Complaint nor the QWR contains specific misrepresentations made by Defendant, to say nothing of the "who" and "when" required for this type of claim.   Noticeably lacking is a proper identification of persons who allegedly misstated facts, save Plaintiff's attempt to revitalize her Complaint by asserting that such statements "were generally . . . made by Huntington representatives, but certainly . . . by Ms. Tragesser[] in particular."   Pl.'s Resp. at 7.   Similarly, Plaintiff vaguely pleads the "when" contemplated by *Borsellino*, noting

13

that the purported misstatements "occurred at various times between the spring [of] 2009 and June [of] 2010." *Id.* at 6.

Defendant urges the Court to compare the case at bar to *Winforge, Inc. v. Coachmen Industries, Inc.*, No. 1:06-cv-619-SEB-JMS, 2007 WL 854025 (S.D. Ind. Mar. 13, 2007), wherein we held that numerous misrepresentations in various places over a prolonged period of time did not fulfill the requirements of Rule 9(b). Our familiarity with the ruling in *Winforge* allows us to conclude that the instant lawsuit is analogous to that analysis. We remind the parties of our guidance in *Winforge*, namely that:

> It is true that, where defendants are all "corporate insiders," the requirements of Rule 9(b) may be somewhat relaxed. However, even [then], the particularity requirement is loosened only if "the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations." Plaintiffs have not met their burden in this regard. Plaintiffs' fraud and constructive fraud claims are premised on representations allegedly made over the course of approximately two-and-a-half years . . . , through various methods of communication, and from various locations. Their complaint contains not a single, specific date, name, or representation, over the course of those years, which they maintain were fraudulent. Without more specifics, Defendants cannot be expected to parse all communications that occurred between themselves . . . and Plaintiffs in order to determine which might possibly qualify as fraudulent in Plaintiffs' opinion.

*Winforge*, 2007 WL 854025, at *5 (internal citations omitted). Additionally, given that many of the so-called misstatements in *Winforge* were, as here, communicated over the phone, we expressed doubt that the plaintiffs truly had no way to muster "at least *some* more specific information about the alleged misrepresentations." *Id.* Our analysis in *Winforge* is undeniably on point; accordingly, we cannot conclude that Plaintiff has met her burden for pleading fraud with particularity.

14

Furthermore, as Defendant argues, the "what" of the alleged fraud (*i.e.*, the statements attributed to several of Defendant's agents) do not constitute actionable misrepresentations. The crux of a fraud claim is that it is based on a misrepresentation of material fact, not on mere opinion. *SMC Corp.*, 2004 WL 828226, at *2 (citing *Whiteco Props. v. Thielbar*, 467 N.E.2d 433, 437 (Ind. Ct. App. 1984)). Only when the content of the statement at issue "is susceptible of 'exact knowledge' at the time the statement is made" may such statement be deemed one of fact. *Id.* (quoting *Vaughn v. Gen. Foods Corp.*, 797 F.2d 1403, 1411 (7th Cir. 1986)). "Fraud [also] may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed." *Anderson v. Indianapolis AAMCO Dealers Adver. Pool*, 678 N.E.2d 832, 837 (Ind. Ct. App. 1997). Here, although Plaintiff insists that she has properly alleged a misrepresentation, we cannot agree.

Having carefully reviewed Count III of the Complaint, we are nonplused by Plaintiff's stated belief that the allegations contained therein adequately plead an actionable misrepresentation. Count III mentions Defendant's alleged errors in servicing Plaintiff's account and its filing of a Complaint on Credit Line, which Plaintiff views as an improper scare tactic. However, the closest Count III comes to pleading a misrepresentation is the allegation in Paragraph 69 that "Defendant intentionally misrepresented and fraudulently sought to conceal [its] liability." Compl. ¶ 69. Labeling this statement an actionable misrepresentation would be absurd; it is clearly of the same bare-bones, conclusory ilk that is fatal to a fraud claim. Nor has Plaintiff remedied this

15

defect by contending in her response brief that "[the] alleged misrepresentation is the Defendant's knowing and false representation that . . . errors would be rectified and that payments should continue to be made and would be accepted." Pl.'s Resp. at 6. In our view, these alleged misstatements are not assertions of past or existing fact, but uninformed manifestations of opinion and future promises. We also note that, to the extent such expressions can be deemed promises of what Defendant "would" do or directives as to what Plaintiff "should" do, they do not properly frame a fraud claim. *See Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1116 (Ind. Ct. App. 2008) (statements of intent were not actionable misrepresentations); *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005) (payment directive was not actionable misrepresentation); *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 889 (Ind. Ct. App. 2000) (alleged promises were not actionable misrepresentations). Ultimately, because the allegations in Plaintiff's Complaint fail to satisfy the most basic tenets of pleading fraud, they are not sufficiently "well-pled" to survive a motion to dismiss.

## Conclusion

Based on the foregoing analysis, the Court finds that Counts II and III of Plaintiff's Complaint fail to state a claim for which relief can be granted. Accordingly, Defendant's Partial Motion to Dismiss Counts II and III is GRANTED. Count I of Plaintiff's Complaint remains pending before the Court.

IT IS SO ORDERED.

Date: _____12/27/2012_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Lucy Renee Dollens
FROST BROWN TODD LLC
ldollens@fbtlaw.com

Michael A. Rogers
FROST BROWN TODD LLC
mrogers@fbtlaw.com

Nelson D. Alexander
FROST BROWN TODD LLC
nalexander@fbtlaw.com

Ryan S. McCrosson
MCCROSSON & ASSOCIATES
rmccrosson@mccrossonlaw.com

Dennis Francis McCrosson, III
MCCROSSON & ASSOCIATES
dmccross@mccrossonlaw.com